# Raoul Zaltzberg, Esq.

| | | |
|---|---|---|
| Zaltzberg Law | *Attorney at Law* | (212) 609-1344 |
| 14 Wall Street, 20th Floor | | (212) 609-1345 |
| New York, New York 10005 | www.zaltzberglaw.com | Raoul@ZaltzbergLaw.com |

_____

February 9, 2023

**BY ECF**
Hon. John G. Koeltl
US District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10078

Re: *United States v. Ivan Morgan*
22 CR 185 (JGK)

Dear Judge Koeltl:

This letter is respectfully submitted in connection with the sentencing of Ivan Morgan, which is currently scheduled for February 23, 2023, and in support of a below guidelines sentence. Such a sentence is warranted, not only based on the recommendation of the United States Probation Office[1] but, in recognition of Ivan's remorse and acceptance of responsibility for what he has done. Ivan has faced obstacles in his life that caused him to fall of the path of a law-abiding citizen, though he doesn't offer this as an excuse, merely an explanation. Ivan takes full responsibility for his actions, treating this experience and the consequences that follow as a life lesson.

## Introduction

Ivan Morgan stands before the Court as a twenty-nine-year-old man, who has readily and wholeheartedly accepted responsibility for his participation in a scheme to commit bank fraud. His actions were thoughtless as to his victims, unacceptable, and deserving of consequences. However, a deeper look into the relevant factors of this case allows for some leniency for Ivan. We submit

---

[1] See PSR p.20-27, Recommending 18 Months (variance) incarceration.

that a sentence less than recommended by the guidelines is, under Ivan's particular circumstances, sufficient to serve the purposes of sentencing.

Ivan is deeply remorseful for his actions. While Ivan offers no excuses for what he did, he does want the Court to understand that at the time, he did not fully realize the deep impact his criminality would have on the victims in this matter. Ivan realizes that he chose the wrong path, made an awful mistake and most importantly, that his crime is not victimless. Ivan is "ashamed" and feel like he "let his family down.[2]" Ivan is not proud of what has transpired and prays for the opportunity to make amends to the people he hurt stating, "In life things don't always go as planned and I really feel like this is a big wake up call for me.[3]"

This Court's "overarching statutory mandate" is to impose the minimum sentence sufficient to serve the purposes of sentencing. *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). We write to assist and inform the Court pursuant to that mandate. We urge the Court to consider Ivan's still young age and hope for a second chance while fashioning the appropriate sentence in this matter.

## The History and Characteristics of Ivan Morgan

Ivan Morgan was born on January 16, 1994, in Brooklyn, New York. Ivan was born to a single mother; he never met his biological father and to this day doesn't have any information concerning his identity. Ivan has one brother who resides and is employed in Georgia. Additionally, Ivan has two half siblings, ages 25 and 19 who live with their mother in Far Rockaway, as well.

Ivan didn't have the easiest upbringing; his childhood was unstable to at best. At a young age his mother dealt with drug abuse and addition[4]. This led to him, and his brother being removed from their home and placed into foster care. He only lived with a foster family for a short period

---

[2] See Exhibit 1: Letter from Ivan Morgan
[3] See Exhibit 1: Letter from Ivan Morgan
[4] "The increased risk for adverse adult outcomes remained after accounting for childhood psychiatric status and other adversities, suggesting that parental incarceration is associated with profound and long-lasting effects for children." Duke University. (2019, August 23). Children of incarcerated parents have more substance abuse, anxiety. *ScienceDaily*.

of time before he was taken in by relatives of his mother in Florida and Georgia. He stayed with family members from 7 to 11 years old before moving yet again. Around the age of 11 his mother became sober and regained custody of her children. Though Ivan always had the basic necessities, he and his family lived an underprivileged life.

Ivan went on to graduate from Academy for Environmental Leadership, a high school in Brooklyn, in 2012. In high school Ivan was a basketball player. Basketball was something he loved and his motivation to succeed. He had dreamed of going to college to play basketball after high school. While in high school he severely injured his knee which inevitably prevented him from playing sports again. This was a devasting blow to Ivan's future plans and the cause of personal and mental anguish. Ivan persevered, after graduating from high school, he attended LaSalle University in Philadelphia, PA in hopes of getting a degree and gain valuable life skills. There he studied communications, broadcasting and sports management. Unfortunately, withdrawing in 2012, he was not able to complete his degree at LaSalle due to financial and personal restraints.

Ivan has since been living with his mother in Brooklyn and worked small jobs here and there for friends as a construction laborer.

### **The Offense Conduct**

Mr. Morgan's personal history is not meant to be an excuse for committing a crime. Ivan knows full well that what he did is completely on him and him alone. However, coming from an upbringing in which he had no real knowledge of this father, Ivan's "[M]in objective for me since I was a kid was to be the man of the house.[5]" In a misguided effort to help support his family, Ivan chose the wrong path.

There is no dispute that the present crime is a serious crime. But this has been a reality check for Ivan and has given him time to be able to clear his head, think about his circumstances and for the first time, reflect on his life and the direction it has taken. Ivan feels that he has

---

[5] See Exhibit 1: Letter from Ivan Morgan

disappointed his family and is truly sorry for what he has done.[6] He admits that he has made a mistake saying that, "sometimes you go through things to learn from and this is one of them for me.[7]" Ivan's goal is to get through this situation with a new outlook on life while staying out of trouble. He is ready to work hard to provide for his family and pay back his debts.

Ivan's willingness to accept responsibility should be considered. The application of the particulars of this situation demonstrates that Ivan Morgan is not a threat to society and that a sentence less than that recommended by the guidelines be well within the statutory framework. A sentence of extended incarceration is not required as he poses no threat to society and can live a law-abiding life. Ivan is a hard-working brother, son, and a friend.

Mr. Morgan is also far from a threat to the community; his friends and family describe him as a kind and philanthropic person.[8] Ivan was not only a role model for his younger brother Tyshawn, but he was also a trusted caretaker. Ivan would push Tyshawn always be better, encouraging him to eat right, ensuring he is at basketball practice and even helping him with homework.

Ivan is described as anything but a danger to his community by those who know him. His friend Shemel White describes him as a caring person who works hard in his community, hosting fundraisers, feeding the homeless and playing basketball with the local youth. Those who know Ivan Morgan were shocked to hear of this charge against him. His peers only know him as a loving and caring person, constantly working to support his family and those around him. Ask anyone how knows Ivan and they will tell you that a second chance would not be wasted on him, he will learn from his mistakes and do good in life.

### The Plea Agreement and Presentence Report

Ivan Morgan entered a plea of guilty to Count One, conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1344. It should be noted that though that his

---

[6] See Exhibit 1: Letter from Ivan Morgan
[7] See Exhibit 1: Letter from Ivan Morgan
[8] See Exhibit 2: Character letters

participation in the conspiracy resulted in an intended loss of up to $550,000, Ivan was determined to be responsible for a fraction of that amount in terms of actual losses[9].

The parties have entered into a Plea Agreement that calculates the advisory sentencing guidelines for his plea to conspiracy to commit bank fraud in violation of 18 U.S.C. §1344 as follows, which are consistent with those in the Presentence Report[10]:

| | |
|---|---|
| Base Offense Level | 7 |
| Loss Amount Between $250,000 - $500,000 | +12 |
| > 10 Victims | +2 |
| Involved Stolen Bank Info | +2 |
| Acceptance of Responsibility | -3 |
| **Total** | **20** |

According to the sentencing table in the USSG Chapter 5, Part A, Ivan has zero criminal history points. That places him in criminal history category of I. Based upon the calculations set forth above, Mr. Morgan's Guidelines range is 33 to 41 months' imprisonment and the applicable fine range is $15,000 to $1,000,000.

The Probation Department recommends a downward variance to 18 months' imprisonment. Mr. Morgan has reviewed the Presentence Report, and he has no objections to the facts or conclusions of law. Despite the Guidelines range of imprisonment, he respectfully submits that a below guidelines sentence is appropriate.

While the Guidelines are the "starting point and the initial benchmark," the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007). The Supreme Court again reiterated this principle in *Nelson v. United States*, 555 U.S. 350, 352 (2009) by emphasizing that "[t]he Guidelines are not only not mandatory on sentencing courts;

---

[9] See PSR ¶ 26 : $55,705.34
[10] See PSR ¶ 30-42

they are also not to be presumed reasonable" (emphasis in original). Rather, the sentencing judge is directed to make an "individualized assessment" of the sentence warranted "based on the facts presented." Id. at 597. The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008).

The Second Circuit has similarly held that,"[e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant." *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010). Therefore, sentencing is far from a mechanical application of the Guidelines. Rather, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometime mitigate, sometimes magnify, the crime and the punishment to ensue.' *Rita*, 551 U.S. at 364 (Stevens, J. and Ginsburg, J. concurring) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). In *United States v. Gupta*, for instance, although the Guidelines Range was 78-97 months, Judge Rakoff imposed a 24 month "non-guidelines" sentence, explaining, "[the notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense." *Gupta*, 904 F. Supp. 2d at 350.

Finally, The United States Sentencing Commission (hereinafter USSC) defines departures as "authorized adjustments to a sentencing range within the guideline system." *United States v. McBride*, 434 F.3d 470 (6th Cir. 2006); *United States v. Andrews*, 447 F.3d 806 (10th Cir. 2006) ("while the guidelines discourage consideration of certain factors for downward departures, Booker frees courts to consider those factors as part of their analysis under § 3553(a)"); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (collecting cases) (while "[p]olicy statements issued by the Sentencing Commission are, of course, pertinent to sentencing determinations even under the now-advisory guidelines, . . . such policy statements normally are not decisive as to what may constitute a permissible ground for a variant sentence in a given case"). A "variance" outside the guideline range provided for in the Guidelines Manual should occur after consideration of all relevant departure provisions. *United States v. Gall*. Courts have held that variances are not subject

to the guideline analysis for departures. *See e.g. United States v. Fumo,* 655 F.3d 288, (3d Cir. 2011). In a report done by the USSC, for the fiscal year of 2021[11], in the Second Circuit only 27.1% of the sentences imposed were within the guidelines while nearly three-fourths (72.8%) fell below the guidelines. More specifically, in the Southern District, over 80% of the sentences imposed fell below the guidelines. Thus, in the Southern District of New York, a sentence below the guideline range is an overwhelming norm, and not the exception.

### The 3553(a) Factors Support a Below Guideline Sentence.

With respect to individual deterrence, this is Mr. Morgan's first criminal conviction[12]. He has never been on probation or supervised release before. The fact that Mr. Morgan is now a convicted felon is punishment enough, given that it will severely hamper his job prospects. Sufficient punishment can be meted out without lengthy incarceration. *United States v. Bannister*, 786 F.Supp.2d 617, 690 (E.D.N.Y. 2011) (pragmatism and a sense of fairness suggest reconsideration of our overreliance on incarceration). Mr. Morgan is not a danger to the community and has a low risk of recidivism. His staying out of trouble since his arrest reflects his remorsefulness. A sentence at or above guidelines is not necessary to protect the public against future criminal conduct.

In considering general deterrence in terms of public necessity, a large body of research now concludes that jail time doesn't discourage criminals from future crime[13]. In addition to specific deterrence, a below guideline period of incarceration will generally deter others who are considering making the same mistake as Mr. Morgan. Studies have shown that it is the arrest, that best deters, not the length of the sentence[14].

It is respectfully submitted that a long prison sentence is not necessary to achieve the goals of specific or general deterrence in this case. Sentencing Mr. Morgan to a guidelines prison term will not send a message that any others will realistically receive.

---

[11] See Datafile , USSCFY21, *U.S. Sentencing Commission*, 2021.
[12] On 2/11/18 Mr. Morgan pled guilty to disorderly conduct
[13] See Rethinking Prison as a Deterrent to Future Crime, *Knowable Magazine* (July 13, 202).
[14] See Valerie Wright, The Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment, 5-6 (2010).

Moreover, non-violent crimes such as this one, violent offenders generally recidivate at a higher rate, more quickly, and for more serious crimes than non-violent offenders, regardless of whether the violence occurred during the instant federal offense or during prior criminal activity[15]. Indeed, given Mr. Morgan's current age of 29, statistically speaking, his rate of offending decreases and continues to do so significantly[16]. The prevalence of offending tends to increase from late childhood, peak in the teenage years (from 15 to 19) and then decline in the early 20s. (see Figure 1).



**Figure 1: An example of an age-crime curve**

Finally, the imposition of a below guidelines sentence and supervision in this case will not create any sentencing disparities, either nationally or locally. Further, such a sentence for this defendant would not be inconsistent with the sentences imposed on other defendants prosecuted in this investigation.

---

[15] See See Recidivism Among Federal Violent Offenders, *U.S. Sentencing Commission*, 2019.
[16] See Loeber, Rolf, and Rebecca Stallings, "Modeling the Impact of Interventions on Local Indicators of Offending, Victimization, and Incarceration," in Young Homicide Offenders and Victims: Risk Factors, Prediction, and Prevention from Childhood, eds. Rolf Loeber and David P. Farrington, New York: Springer, 2011: 137-152

**<u>Conclusion</u>**

An individualized assessment of the § 3553(a) factors in this case strongly support a non-Guidelines sentence of 12 months, followed by an additional 36 months of supervised release. Mr. Morgan respectfully requests that the Court impose that sentence upon him. On behalf of Ivan Morgan, thank you for your consideration.

                                              Respectfully submitted,

                                              /s/ Raoul Zaltzberg
                                              Attorney for Mr. Ivan Morgan

cc: AUSA Andrew Chan